UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1040 South Main Street Holdings, L.L.C.

      Plaintiff,

v.                                                                 Case number 12-12143
                                                                Honorable Julian Abele Cook, Jr.

LARS Associates, L.L.C.

      Defendant.

## ORDER

The Plaintiff, 1040 South Main Street Holdings, L.L.C., commenced this action, seeking to obtain declaratory relief against the Defendants, LARS Associates, L.L.C.. Currently before the Court is the Defendant's motion to dismiss this action, Fed. R. Civ. P. 12(b)(6).

## I.

The Plaintiff is a limited liability company whose sole member is the Wells Fargo Bank, N.A. which has designated the state of North Dakota as its principal place of business. The Defendant is a limited liability company whose principal office is located in Michigan and whose members are residents of Michigan. As the amount in controversy herein exceeds the sum of $75,000, the Court has jurisdiction to resolve the issues in this controversy, as authorized by 28 U.S.C.§ 1332(a)(1).

On December 16, 2004, the Defendant received a four million dollar loan from CWCAPITAL L.L.C. (a non-party to this litigation) for the purchase of commercial real estate in Chelsea, Michigan which served as the security for the loan. The ownership of this loan was

1

thereafter transferred to, and through, a number of corporate entities, with an ultimate assignment to the Plaintiff.

The Defendant defaulted under the terms of the loan when it failed to make timely payments in and following May of 2011. Three months later (August 5, 2011), a formal notice of default was transmitted to the Defendant which had the legal, as well as the practical effect of accelerating the loan. The letter notified the Defendant that (1) all amounts due under the loan agreement must be paid immediately, (2) that the Defendant's authority to collect rental payments from the lessees of the commercial properties had been automatically revoked upon its default, and (3) all proceeds of rent should thereafter be delivered to the Plaintiff. No positive reaction by the Defendant followed.

On December 6, 2011, the Plaintiff caused a statutory notice of default to be filed with the Washtenaw County Register of Deeds, which was designed to establish its right to receive rental income from the above identified property under these circumstances (i.e., default). A foreclosure by advertisement, as well as a notice which announced the details of the sale of the property at a public auction was thereafter initiated by the Plaintiff. A sheriff's sale of the property to the Plaintiff for $1,400,915.00 was conducted on December 8, 2011.[1]

On January 19, 2012, the Plaintiff notified the existing tenants of the change in ownership and directed them to make their rental payments to its office. On April 30, 2012, the property was redeemed from the foreclosure sale by the payment of the redemption amount of $1,461,118.11from the Defendant to the Plaintiff.

This lawsuit represents a continuing struggle over the right of the Plaintiff to continue

---

[1] The amount due on the loan as of December 8, 2011 was in excess of $3,900,000.00.

collecting monies from the tenants in order to recover the deficiency from the original loan. The Defendant complains that the Plaintiff does not have any right to continue its enforcement of the assignment of rents after the redemption period. In support of its position, the Plaintiff seeks to obtain a declaratory judgement which, if granted, would determine that it has a lawful right to the rental income until the remaining loan balance is paid. The Defendant, as evidence of its opposition to the Plaintiff's position, has now filed a motion to dismiss.

## II.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court is encouraged to (1) accept the plaintiff's well-pleaded allegations as being true and (2) construe each of them in a light that is most favorable to its position in this controversy. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, a complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered" by the court. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, those "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.

In a direct challenge to the Plaintiff's argument, the Defendant submits that the law in Michigan declares that an assignment of rents can exist only in connection with a mortgage. In support thereof, the Defendant cites Mich. Comp. Laws § 554.231:

> Hereafter, in or in connection with any mortgage on commercial or industrial property other than an apartment building with less than 6 apartments or any family residence to secure notes, bonds or other fixed obligations, it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

The Defendant asserts that when the property was redeemed, the mortgage was satisfied and ceased to exist as a lien against the property. As a consequence, the Defendant maintains that the assignment of rental income which had been made in connection with the mortgage also ceased to exist.

In support of this position, the Defendant asserts that Mich. Comp. Laws § 554.231 (law of Michigan allowing assignment of rental income) is in derogation of common law and therefore must be strictly construed, citing *In re Mount Pleasant Ltd. Partnership*, 144 B.R. 727, 734 (W.D. Mich.1992) ("[T]he Court views the statute as stating the limit, or fullest extension, of a mortgagee's rights."). The Plaintiff disagrees and asserts that it is entitled to a continuation in assignment of rent income from those leases that were in effect from December 16, 2004 (date of security instrument) to December 8, 2011 (date of sheriff's sale) until the deficiency on the original loan is fully paid. Interestingly, both parties cite *Security Trust Co. v. Sloman*, 252 Mich. 266 (1930) and *Smith v. Mutual Life Ins. Co.*, 362 Mich. 114 (1960) in support of their respective positions.

In *Smith*, the plaintiffs were owners of a commercial property who borrowed $110,000 from the defendant. The loan was secured by a mortgage on the commercial property and included a provision which assigned the income from the tenants to the lender in the event of a default. A default did occur and a sheriff's sale was conducted thereafter which resulted in the defendant being declared to be the highest bidder, leaving a deficiency of $5,089.46. The plaintiffs sued, seeking to enjoin the defendant from collecting rents pending the foreclosure proceedings. The court declared that the defendant was entitled to collect rental income (beginning with the date of default), that was due from those leases that existed when the mortgage was executed. The court

5

also determined that the defendant could receive rental income not to exceed the amount of the deficiency which remained after the sheriff's sale. However, the court noted that this assignment "is given in connection with the mortgage and does not modify its conditions, it is not superior to it. The right ceases at the expiration of the period of redemption if the premises are not redeemed." *Smith*, 362 Mich. at 124.

The Defendant cites this language for the proposition that foreclosing a lender's right to receive rental income only runs until the expiration of the redemption period. However, the Plaintiff argues, that (1) a different outcome may be required when - as here - the property is redeemed, and (2) Smith stands for the principle that when an assignment of rental income is given as additional security for a loan, it is effective until the debt is fully paid. Smith does not address which party is entitled to receive the rental income after a mortgagor redeems the property in question but leaves a deficiency. This case is limited to determining who can obtain rental income during the pendency of the foreclose. *Smith,* 362 Mich. at 125-126.

In *Sloman* the lender foreclosed on a property and subsequently sold it. The mortgage contained a clause which assigned the rental income in the event of a default. The borrower, lender, and the purchaser became embroiled in a dispute as to who should be the recipient of the rental income that had been collected during the interim period (i.e., between the foreclosure sale and the redemption or expiration of the redemption period). The Michigan Supreme Court found that the mortgagee was entitled to receive and retain the rental income pursuant to the state assignment of rents statute that was in effect when the loan documents were executed. Unfortunately, this case does not directly address the question of whether an assignment of rent survives the redemption of the property by the mortgagor.

The Plaintiff focuses on language in *Sloman* and *Smith,* that declared that an assignment of rental income "continues after sale, if there be a deficiency, until the deficiency is paid," and "ceases at the expiration of the redemption period if the premises are not redeemed." *Sloman*, 252 Mich. at 274; *Smith* 361 Mich. at 125. However, these cases do not directly hold that a lender can continue receiving rental income following the redemption of the property. Indeed, the Plaintiff has not directed the Court to any case holding which declares that a lender may collect monies under an assignment of rental agreement after the borrower has redeemed the property from the foreclosure sale.

The Court finds that the assignment of rental income was authorized by the loan documents. Pursuant to Mich. Comp. Laws § 554.231 the assignment must be connected to the mortgage. As noted in *Sloman*, "as the assignment of [rental income] is given in connection with the mortgage and does not modify its conditions, it is not superior to it." 252 Mich. at 274. Under Mich. Comp. Laws § 600.3244, the mortgage is satisfied if and when the borrower redeems the property. Therefore, once the redemption of the property has been accomplished, the Plaintiff is no longer entitled to the rental income.

It should also be noted that the documents involved herein provide that the loan is nonrecourse. The promissory note states:

> **2.04 Exculpation.** Notwithstanding anything in the Loan Documents to the contrary, but subject to the qualifications herein below set forth:
>
> (a)    Borrower shall be liable upon the indebtedness evidenced hereby and for the other obligations arising under the Loan Documents to the full extent (but only to the extent) of the Collateral, including the rents, issues, income and profits from the Security Property collected after an Event of Default . . . . In the event of a foreclosure of such liens, security titles, estates, assignments, rights or security interests securing the payment of this Note and/or the other obligations of Borrower under the Loan Documents, no

> judgment for any deficiency upon the indebtedness evidenced hereby shall be sought or obtained by Lender against Borrower. . . . (Compl. Ex. A.).

The Plaintiff exercised its rights when it foreclosed upon the property. When the Defendant redeemed the property, the terms of the mortgage were satisfied and the Plaintiff is prohibited, based on the language in the promissory note, from seeking a judgment for the deficiency. As stated in the sheriff's deed that was given as a result of the foreclosure sale, the Plaintiff foreclosed on all of its interests in the property that secured payment of the note:

> In consideration of the sum of money so paid as set forth above, have granted, conveyed, bargained, and sold, and by this Deed do grant, convey, bargain, and sell unto the Grantee, its successors and assigns, forever, all the estate, right, title, and interest that the Mortgagor had in the Real Estate and every part thereof, on December 16, 2004, that being the date of the Mortgage, or at any time thereafter, to have and to hold the Real Estate and every part thereof, to the Grantee, its successors and assigns, forever, to its or their sole and only use, benefit, and behoof, forever, as fully and absolutely as I, the Deputy Sheriff stated above, under the authority stated above, might, could, or ought to sell the same (Def.'s Mot. Dismiss Ex. 5).

Neither the loan documents nor the law in Michigan give the Plaintiff any continuing interest in the rental income that was generated from the property.

Accordingly, the Defendant's motion to dismiss is granted. (ECF 10). The Plaintiff's motions for (1) rental escrow and an expedited hearing (2) the entry of a summary judgment, and (3) leave to file an amended complaint are denied for mootness. (ECF 13, 15, and 26).

IT IS SO ORDERED.

Date: December 5, 2012  s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
U.S. District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 5, 2012.

s/ Kay Doaks
Case Manager